IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CRYSTAL WALKER, *on behalf of herself and all similarly situated individuals,* | : : : |
| Plaintiff, | : : |
| v. | : Civil Action No. 3:21-cv-306 : |
| REALPAGE, INC., | : : |
| Defendant. | : : |

## CLASS ACTION COMPLAINT

Plaintiff, Crystal Walker, by counsel, on behalf of herself and all similarly situated individuals, brings the following Complaint against the Defendant, RealPage, Inc. ("RealPage"). In support of her Complaint, she alleges as follows:

## INTRODUCTION

1. When enacting the Fair Credit Reporting Act, Congress found that consumer reporting agencies "have assumed a vital role" in society, and there was a need to ensure that they "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S. Code § 1681(a)(3)-(4). To accomplish Congress' goal, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), which is one of the cornerstone provisions of the statute.

2. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high, and often disregarded, standard on credit reporting agencies. *See, e.g.,*

1

*Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that " 'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3. This case arises because RealPage uses overly broad criteria in response to its customers' requests for tenant screening reports. In this instance, RealPage provided Plaintiff's potential landlord with a grossly inaccurate report stating that Plaintiff had an eviction action against her. RealPage matched this public-record information to Plaintiff even though it knew that the Plaintiff had a different first name and address than the individual to whom the public record actually belonged.

4. By systematically allowing eviction records to be attributed to consumers who had different names than the person associated with the underlying eviction record, Defendant failed to maintain reasonable procedures to assure maximum possible accuracy. Because the putative class members were subject to the same procedure and suffered the same overarching harm, this case is capable and appropriate for class resolution.

## JURISDICTION

5. The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this judicial district.

**PARTIES**

7. Plaintiff is a natural person and a "consumer" as defined and governed by the FCRA, 15 U.S.C. § 1681a(c).

8. Defendant RealPage is a Delaware limited liability company doing business throughout the United States, including in the State of Virginia, and has its principal place of business located at 2201 Lakeside Blvd., Richardson, TX 75082.

9. Defendant RealPage is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

10. Specifically, Defendant RealPage sells consumer reports, also called background reports, tenant screening-reports, and credit reports, to landlords to use in deciding whether to rent to a prospective tenant. These reports include the prospective tenant's employment history, criminal history, sex offender status, landlord tenant court records, and credit information.

**FACTS**

*RealPage's Business Practices*

11. Defendant RealPage has operated in the rental screening business since 1998.

12. Upon information and belief, Defendant RealPage processes thousands of rental screening reports each year. It boasts that it "offer[s] access to the industry's largest rental payment

history database, in-depth criminal background information, and extensive rental credit checks – including credit reporting from Experian, Equifax and Transunion."[1]

13.     Upon information and belief, discovery will show that Defendant RealPage purchases eviction information from a vendor, LexisNexis, and then runs it through an algorithm that matches the record to a consumer's background report based on certain matching criteria. Discovery will show that this process takes place electronically, with no human being involved in the compiling, matching, and reporting of eviction data.

14.     However, upon information and belief, Defendant RealPage's algorithm allows eviction information to be placed on a consumer's report, even though it does not match the personal identifying information (such as name) of the applicant to whom the report relates.

15.     This procedure results in the matching of inaccurate eviction records to consumers, as demonstrated by the Plaintiff's experience in this case.

*Facts Regarding the Plaintiff*

16.     In March 2021, Plaintiff applied to rent an apartment at the Ivy Gates apartment complex in Petersburg, Virginia.

17.     As part of the application process, Plaintiff was required to undergo a background check.

18.     In order for her landlord to obtain her background report, Plaintiff provided her name and current address.

19.     Plaintiff's landlord ordered Plaintiff's background report from Defendant RealPage on or around March 31, 2021. In requesting Plaintiff's background report, the landlord provided Defendant RealPage with all of Plaintiff's personal identifying information.

---

[1] https://www.realpage.com/apartment-marketing/resident-screening/ (last visited Apr. 29, 2021).

20. Defendant RealPage provided Plaintiff's background report to the Ivy Gates apartment complex on or around March 31, 2021.

21. The report that Defendant RealPage provided to Ivy Gates regarding the Plaintiff was grossly inaccurate.

22. The report stated that Plaintiff had been previously evicted in a proceeding in Petersburg General District Court.

23. This record does not belong to the Plaintiff.

24. Plaintiff has never been evicted from an apartment or been a party to an eviction proceeding.

25. Defendant RealPage knew or should have known that this information did not belong to the Plaintiff because it did not match the personal identifying information that Ivy Gates provided RealPage when it requested Plaintiff's report.

26. For example, the person listed on the eviction case was "Christopher Walker."

27. Plaintiff's first name is not Christopher.

28. In addition, the address listed on the eviction case was 1025 S. Crater, Apt. 7E, Petersburg, VA 23015-1488.

29. Plaintiff has never lived at that address.

30. Despite these discrepancies, Defendant RealPage matched the information to Plaintiff's background report and reported it to her potential landlord—apparently because Plaintiff had the same last name as the actual subject of the eviction action.

31. As a result of Defendant RealPage's inaccurate and misleading background report regarding the Plaintiff, Ivy Gates denied Plaintiff's rental application.

32.     At all times relevant to this lawsuit, Defendant RealPage's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA.  RealPage's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and RealPage will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

33.     If Defendant RealPage had reasonable procedures to ensure that the information it published about prospective tenants to its customers was as accurate as possible, it would not have included the eviction action on Plaintiff's report that, on its face, did not belong to the Plaintiff due to a mismatched first name.

34.     Defendant RealPage is well aware of the FCRA's requirement that the information it reports about prospective tenants must be as accurate as possible and that its loose matching criteria violates this requirement.

35.     Defendant RealPage's predecessor company, RealPage Manager, Inc. was sued for similar FCRA violations. *Wenning v. RealPage Manager, Inc.*, No. 14 CIV. 9693 (PAE) (S.D.N.Y. July 8, 2016).

36.     In addition, RealPage, has been sued by the Federal Trade Commission ("FTC") for FCRA violations due to its reporting practices because it used loose matching criteria to link potential tenants with criminal records, including records containing sex offender registry information. *FTC v. RealPage, Inc.*, No 3:18-cv-2737 (N.D. Tex.). RealPage paid $3 million, the largest civil penalty obtained by the FTC against a background screening company, to settle FTC

6

claims alleging it failed to take reasonable steps to ensure the maximum possible accuracy of tenant screening information it includes in its consumer reports provided to its clients.

### COUNT I – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Class Claim

37. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

38. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class defined as follows:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant RealPage; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) which identified the applicant has having a prior eviction; (d) despite the fact that the name listed on the eviction action did not match the applicant's name.
>
> Excluded from the class definition are any employees, officers, directors of Defendant RealPage, any attorney appearing in this case, and any judge assigned to hear this action.

39. **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Defendant RealPage and the class members may be notified of the pendency of this action by published and/or mailed notice.

40. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1.) whether RealPage's failure to require name matches for eviction records was a procedure designed to ensure that its reports were as accurate as possible; (2.) whether RealPage's

7

conduct constituted a violation of the FCRA; and (3.) whether RealPage's conduct was willful.

41. **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

42. **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with her counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor her counsel have any interest that might conflict with her vigorous pursuit of this action.

43. **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by RealPage's conduct. By contrast, the class-action device will result in substantial benefits to the

litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

44. In the alternative, Plaintiff could seek an issue-only certification under Fed. R. Civ. P. 23(b)(3) and 23(c)(4) as to Defendant RealPage's liability and willfulness in this case, and leave the issue of damages for individual determination.

45. As described above, Defendant RealPage used loose matching criteria and algorithms that placed eviction data on consumers' tenant screening reports, even though the names associated with the records did not match the applicant's name.

46. This conduct violated § 1681e(b) of the FCRA because in using this loose matching criteria and algorithms, RealPage failed to follow reasonable procedures to assure the maximum possible accuracy of the information it that it published about consumers to its landlord clients.

47. Plaintiffs and each putative class member suffered real and actual harm and injury.

48. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in RealPage's files and reports.

49. Class members were also falsely painted as irresponsible tenants to their prospective landlord.

50. RealPage's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering RealPage liable under 15 U.S.C. § 1681o.[2]

---

[2] Plaintiff seeks statutory and punitive damages on behalf of herself and the putative class members. If class certification is denied, Plaintiff intends to seek actual damages for Defendant RealPage's violation.

51. As a result of these FCRA violations, RealPage is liable for statutory damages from $100.00 to $1,000.00 for Plaintiff and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, on behalf of herself and the putative class members, moves for class certification and for statutory and punitive damages, as well as her attorney's fees and costs against the Defendant; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**CRYSTAL WALKER**

By: ___*/s/ Kristi C. Kelly*___
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiff*